UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

TIMOTHY KINCAID
a/k/a Sha-Teak Ahmar Imani,

        Plaintiff,                Case No. 2:07-cv-159

v.                                    Honorable Robert Holmes Bell

TIM LOUMA, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff shall pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

  I.  <u>Factual allegations</u>

  Plaintiff is presently incarcerated at the Alger Maximum Correctional Facility (LMF). He complains of events that occurred while he was housed at the Baraga Maximum Correctional Facility (AMF), and later at LMF. He brings this suit against forty individuals and the Correctional Medical Services (CMS). In his eighty-one page complaint, Plaintiff makes the allegations that follow.

  While at AMF, Plaintiff was the lead server in the food service unit. On two occasions in January 2005, he was reprimanded by Defendant Carol Parquette, kitchen supervisor, concerning the portions of food he was giving to certain individuals. After Defendant Parquette gave Plaintiff a negative evaluation, Plaintiff filed a grievance. Defendants Parquette, Joe Nehar and Ray Gazlay then allegedly conspired to reassign Plaintiff to the dish tank, where he worked for two days before being transferred back to the food service line. Thereafter, he was harassed by food services employees in various ways, such as being assigned to the dish tank when called to work overtime. In May 2005, Plaintiff was transferred to the food service position of porter/painter, where he remained through July 2005. During this time, Defendants Parquette, Nehar and Gazlay assigned him excessive amounts of difficult work, such as cleaning the large garbage can, which was not in the job description. Plaintiff's request to transfer to the commissary was denied. Plaintiff was eventually given the job of diet cook. Defendants Parquette, Nehar and Gazlay began writing negative evaluations of Plaintiff, and falsely accusing him of all mishaps that occurred in the diet kitchen. Plaintiff was eventually relieved of his position in the diet kitchen and was transferred to

the regular kitchen as second cook. Plaintiff continued filing grievances, which resulted in increased harassment by Defendants.

While at AMF, Plaintiff was successfully working towards his general education certificate (GED). After he received his GED, he intended to enroll in the Ohio University Program for the Incarcerated. On January 19, 2006, Plaintiff was transferred to LMF. When he arrived at LMF, he was placed on a waiting list to receive educational services. He was admitted into the education program in June 2006, but was given only six days to prepare to take the mathematical portion of the GED test. The delay interfered with his rehabilitation plan to enroll in the Ohio University Program.

At LMF, Plaintiff was deprived of a job in food service because of negative evaluations from AMF personnel, and has been forced to work a menial porter job earning only ten dollars a month. He also was subjected to an extremely cold cell, forcing him to wear his coat in addition to the blanket he was provided.

Plaintiff submitted a lengthy order to the LMF store. The case manager, Defendant R. LaLonde, altered the order, and Plaintiff received seven denture adhesives, which he had not ordered. Plaintiff returned the product and filed a grievance against Defendant LaLonde. The case manager, Defendant Purture, advised Plaintiff to sign off on the grievance as he would be reimbursed for the adhesives. Plaintiff refused to sign off, and has not been reimbursed. In addition, Plaintiff wished to place an order for a new television, and had adequate funds in his account. Despite repeated requests from Plaintiff, Defendant LaLonde refused to take the necessary steps that would allow Plaintiff to purchase a television. Eventually, Defendant LaLonde completed the paperwork and Plaintiff was able to purchase a new television.

In March 2006, Plaintiff was conducting block representative duties on Spruce wing. The unit manager directed him to go to a different wing. When Plaintiff politely responded, the unit manager ordered him to lock-up. Fearing for his life, Plaintiff filed a grievance. He was later transferred to Pine wing, where unit managers (Unknown) Mirol and (Unknown) Rondeau began harassing him.

Plaintiff's 1982 state court conviction was upheld on appeal, and his first motion for relief from judgment was denied. His second motion for relief from judgment was also denied, and he began working on a motion for reconsideration. He alleges that Defendants (Unknown) Aho, (Unknown) Sharette, and S. Salter, who are law librarians at LMF, refused to assist him with legal matters, denied him extra time in the library, refused to process requests for legal material, and screamed at him. Moreover, they enforce a "silence rule," which makes it uncomfortable to work in the library, but which staff does not obey. Plaintiff filed grievances. Later, a law librarian copied only one side of the two-sided documents Plaintiff intended to attach to his motion for reconsideration, and substantially delayed properly recopying the material. In addition, when Plaintiff sent his typewriter off-site for repairs, prison officials would not permit his family to pay for the repairs. Rather, they instructed family members to send money to Plaintiff's prison account, and Plaintiff could pay for the repairs. As a result of these delays, his motion for reconsideration pertaining to his second motion for relief was denied as untimely.

While Plaintiff was housed at AMF, Dr. Frontera declined to renew Plaintiff's sinus medication, Dmixoral, but instead prescribed a nasal spray, which was not effective. Doctor Frontera also prescribed Selsun shampoo for Plaintiff's ringworm and folliculitis, and denied Plaintiff's request for care from an off-site dermatologist. At LMF, Plaintiff received the same

treatment when Dr. Frontera transferred to that facility. Doctor Miller prescribed a cholesterol medication that was milder than the medication Plaintiff had been taking. Although prescribed, Plaintiff never received the medication.

Plaintiff claims that Defendants have violated the First, Eighth and Fourteenth Amendments, as well as several state laws. For relief he seeks declaratory, injunctive and compensatory relief.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.  State law and policy violations

Plaintiff claims that Defendants have violated several state laws. Section 1983 is addressed to remedying violations of federal law, and does not provide a remedy for violations of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The Sixth Circuit has stated that where federal claims are dismissed prior to trial, district courts should generally decline to exercise supplemental jurisdiction over state law

claims. *See Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991). I recommend that Plaintiff's state law claims be dismissed.

Plaintiff further claims that the Defendants have each violated one or more of the Michigan Department of Corrections' (MDOC) rules or policies. A state's failure to comply with its own laws, rules or regulations does not by itself rise to the level of a constitutional violation, and therefore, fails to state a claim under section 1983. *See Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). I recommend that Plaintiff's claims based upon rule and policy violations be dismissed.

B. Personal involvement

Plaintiff brings this action against several Defendants who have merely responded unfavorably or denied his grievances. Where a defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Also, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overhold v. Unibase Data Entry, Inc.,* No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (finding no constitutional right to a grievance

procedure). Plaintiff's claims against the following Defendants are based upon their responses to his grievances: Tim Louma, Darlene Edlund, Gloria Hill, Betty Kotila, Barry McLemore, L. Rutter, David Bergh, Michelle Horton, Sandy Monroe, Jim Armstrong, and W. Trierweler. Accordingly, I recommend that the claims against these Defendants be dismissed for failing to state a claim.

Plaintiff also raises a due process claim against Patricia Caruso, the MDOC Director. He claims that Defendant Caruso failed to intervene or take any action on the issues raised by Plaintiff in letters and grievances. As stated above, Plaintiff's due process claim fails to state a claim against Defendant Caruso. To the extent Plaintiff attempts to impose supervisory liability upon Defendant Caruso, he also fails to state a claim. A claimed constitutional violation must be based upon active unconstitutional behavior. *Green v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Id.*; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Plaintiff has failed to demonstrate that Defendant Caruso engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Caruso, and I recommend that the claim against Defendant Caruso be dismissed.

### C.  Fourteenth Amendment

Plaintiff claims that he was wrongfully terminated from his prison job as lead server without due process. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d

950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from transfer as lead server to other jobs within food service.

Plaintiff also claims that he was temporarily denied educational services and opportunities for rehabilitation. However, prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1995) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services); *Carter v. Morgan*, No. 97-5580, 1998 WL 69810, at *2 (6th Cir. Feb. 10, 1998) (no constitutional right to educational classes); *Tribell v. Mills*, No. 93-5399, 1994 WL 236499, at *1 (6th Cir. June 1, 1994) ("[N]o constitutional right to vocational or educational programs"). Plaintiff, therefore, has failed to state a claim based upon being temporarily denied educational or rehabilitative programs. Therefore, I recommend that this claim be dismissed.

D. Equal Protection

Plaintiff claims that while he was employed in food service, the actions of Defendants Joe Nehar, (Unknown) Derocha, Carol Parquette, and Ray Gazlay, which negatively affected Plaintiff, were racially motivated. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To establish an equal protection claim, a prisoner must prove that a racially discriminatory intent or purpose was a factor in the decision of the prison officials. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995). A claim that Plaintiff was treated one way and someone of a different race was treated differently, by itself, is not sufficient to state an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992). Absent some allegation or proof that the law was applied differently to Plaintiff because of race, gender, age, or some other improper classification, no equal protection claim has been stated. *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte, J., concurring); *see also Galbraith v. N. Telecom, Inc.*, 944 F.2d 275, 282 (6th Cir. 1991) (a person's conduct is legitimate for purpose of the equal protection clause even though it may have been mean-spirited, ill-considered, or other unjustifiable, objectionable, or unreasonable, so long as it was not motivated by class-based discrimination). Plaintiff provides no factual allegations to support his contention that the Defendants' actions were motivated by racial discrimination. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985);

*Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). Accordingly, I recommend that Plaintiff's equal protection claim be dismissed.

### E.  Eighth amendment - medical treatment

Plaintiff claims that Defendants Frontera, Miller, Hill, Kotila, Monroe and CMS were deliberately indifferent to his medical needs in violation of the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*  Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  *Estelle*, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d at 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).  Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2

(6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at *4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997). Assuming that Plaintiff's sinus, scalp, and cholesterol conditions amount to serious medical needs, Plaintiff did receive treatment. Plaintiff's complaint is merely a difference of opinion with the doctors regarding treatment, which is insufficient to state a § 1983 claim for an Eighth Amendment violation. Moreover, to the extent Plaintiff alleges that he never received the medication prescribed by Defendant Miller, he does not allege that Defendant Miller was responsible for this omission. With respect to Defendants Hill, Kotila, and Monroe, Plaintiff does not allege that they were involved in diagnosing, prescribing medication, or implementing a treatment program. As discussed in section B above, their involvement consisted of responding to Plaintiff's grievances. Accordingly, I recommend that this claim be dismissed.

Moreover, Plaintiff's claim against CMS fails because the corporation cannot be liable for the actions of the individual Defendants based upon a theory of respondent superior or vicarious liability. It is well established that a plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondent superior or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (quoting *Monell v. Department of Social Services*, 436 U.S. 658 (1978)). A plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom caused the alleged injury. *Siva v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818. The Sixth Circuit has specifically held that like a municipal corporation, CMS's "liability must also be premised on some policy that caused a

deprivation of [a prisoner's] Eighth Amendment rights." *Scarcer v. Corr. Med. SYS., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). Plaintiff has pleaded no facts supporting his allegation that, pursuant to contract, Plaintiff's medical treatments were based upon cost concerns. Thus, because CMS is not liable under a theory of respondent superior for the individual Defendants' alleged deliberate indifference to Plaintiff's medical needs, I recommend that this claim be dismissed.

F. Eighth Amendment - Harassment

Plaintiff alleges that he was subjected to continuous verbal harassment by various Defendants. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997)(verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at * 2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth

Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim arising from verbal abuse.

### G. Eighth Amendment - conditions of confinement

Plaintiff alleges that the cells in his wing are unbearably cold. The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm. *Farmer,* 511 U.S. at 823. However, this minimum standard does not impose constitutional liability on prison officials for every injury suffered by an inmate. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id*. at 834. Second, the prison official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

Although temperature control in the wing was not ideal and caused Plaintiff's cell to be uncomfortable, there is no evidence that the temperature level created a risk of serious bodily harm. Moreover, Plaintiff's exhibits attached to his complaint belie his allegation that prison officials were indifferent to the condition. Plaintiff grieved the temperature in his cell, and officials responded. It was discovered that Plaintiff had packed the supply and return air vents in his cell with toilet paper. The resident unit manager removed the plugs, and found the air flow was good. He also checked the boiler system and blower, and found each was working properly. The cell temperature return air was 75 degrees. (*See* Ex. 84). Plaintiff was advised not to plug the vents. Even assuming

this did not correct the situation to Plaintiff's satisfaction, prison officials were clearly not deliberately indifferent to the problem. Accordingly, I conclude that Plaintiff has not stated an Eighth Amendment claim regarding his physical conditions of confinement, and recommend that this claim be dismissed.

### H. Access to the courts

Plaintiff claims that he was denied access to the courts by his restricted access to the law library and legal materials, the constraint on his ability to retrieve his repaired typewriter, and the delay in receiving copies of exhibits he intended to attach to his motion for reconsideration. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing either law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996).

An indigent prisoner's constitutional right to legal resources and materials is not without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Id.* at 349; *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997

WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the Defendants' actions prevented him from pursuing a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

A prisoner's right of access to the courts does not include a federally protected right to use a typewriter because *pro se* prisoners are generally not prejudiced by handwritten filings. *See Penland v. Warren County Jail*, 797 F.2d 332, 335 (6th Cir. 1986); *Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994); *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985); *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978). Plaintiff has not alleged that if his motion to reconsider had been handwritten, the court would have rejected it. Nor has Plaintiff explained how the conduct of the law librarians or his lack of access to certain unidentified material prevented him from preparing his motion for reconsideration. Plaintiff has simply not alleged facts showing that the standard set forth in *Bounds* was violated. Moreover, he has alleged no facts regarding the substance of his motion for reconsideration, and on what basis the documents he wished to attach to the motion could cause the motion for reconsideration to be granted. In other words, there are no factual allegations demonstrating that his motion for reconsideration was not frivolous. Accordingly, I recommend that this claim be dismissed.

### I. Retaliation

Plaintiff claims that the Defendants retaliated against him because of the numerous grievances he filed. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person

of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Because filing a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against, s*ee Smith,* 250 F.3d at 1037; *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996), Plaintiff satisfies the first requirement.

The relevant question in determining whether an action is adverse is whether a defendant's conduct is "capable of deterring a person of ordinary firmness" from filing grievances. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). At AMF, Plaintiff was reassigned from lead server to lesser positions in food service. He was not deprived of employment, and has not alleged that the later jobs paid lower wages. Moreover, after he filed his first grievance against the food service staff, which resulted in his transfer as lead server, he continued filing grievances against food service staff during the remaining time he was incarcerated at AMF. His multiple transfers within food service clearly did not deter Plaintiff from filing additional grievances, nor were the consequences so adverse as to deter a person of ordinary firmness from filing grievances. He also claims that Defendant LaLonde caused him a lengthy delay in purchasing a television. Although Plaintiff was temporarily without a television, the deprivation was not permanent. This consequence was not so adverse as to deter an ordinary person from filing legitimate grievances. With regard to Doctors Frontera and Miller, they continued to prescribed medication for Plaintiff's health problems, albeit not the medication Plaintiff would have preferred. Dr. Frontera, in fact, prescribed the same

medication he had prescribed before Plaintiff filed a grievance against him. Finally, only the failure to provide timely copies of legal documents, which allegedly resulted in Plaintiff's court filing to be untimely, could possibly be considered an adverse action.

The final inquiry is whether Plaintiff's grievances pertaining to the law library were a motivating factor in the alleged retaliatory conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), aff'd, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff's retaliation claims rely solely on the assumption that because he filed grievances against some of the Defendants, and some time later they and other Defendants took actions against him, they acted with a retaliatory intent. Plaintiff has not alleged any facts that support his conclusion. Plaintiff's bare allegations of retaliatory intent on Defendants' part are not enough to establish a retaliation claim. *See Crawford-El v. Britton*, 523 U.S. 574, 588 (1998); *Thaddeus-X*, 175 F.3d at 399. Accordingly, I recommend that the retaliation claims be dismissed.

**Recommended Disposition**

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   May 27, 2008

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).